JOAQUÍN DÍAZ Y DÍAZ, Plaintiff and Appellant, *v.* FRANCISCO DELGADO NEGRONI ET AL., Defendants and Appellees.

No. 5039.   Argued January 14, 1931.—Decided February 13, 1931.

828

*López de Tord & Zayas Pizarro* for appellant.  *Tous Soto & Zapater* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is the second time this case is submitted to our consideration. On the former occasion we confirmed, one of the Justices dissenting, the following holding: "In accordance with section 1474 of the Civil Code, the purchaser of a property has the right to bring an action of unlawful detainer against the person in material possession of it although he may have leased it for more than six years and this fact is known to the purchaser, if the lease is not recorded in the registry of property and there is no agreement to the contrary." *Diaz* v. *Delgado et al.,* 38 P.R.R. 563. The opinion in that case concluded as follows (p. 578):

"The judgment, therefore, must be reversed, as we said at the outset. The defendant will be allowed to amend his pleading. The contents of the proposed amendments in regard to the record of the lease are still confused. If it is meant thereby that the lease was recorded as to all of the properties A, B and C, and later was canceled on half of them by virtue of the action of redemption, we are inclined to think that the said cancellation would not benefit the plaintiff. Nor is the proposed amendment to the second cause of action sufficiently clear. The stipulation of the contract referring to the payment should be alleged with entire precision and likewise in what the default in the payment consisted, for if the lessee was really bound to deposit the rent in a Yauco bank during the week and did so, there would be no cause of action.

"For the foregoing reasons the judgment appealed from is reversed and the case will be remanded to the proper district court for further proceedings not inconsistent with this opinion."

After the case was remanded to the court *a quo,* the plaintiff amended his complaint. The defendants consented to the dispossession as regards the property marked letter "D" and

resisted the action as to properties A, B and C. In the cited opinion it had been said (p. 567):

"With regard to said property D we are confronted by the case of a lease not recorded in the registry which the purchaser did not bind himself to respect on acquiring the property. That being so, his right to a judgment in unlawful detainer seems so clear under the statute applicable and in force in Puerto Rico that it can scarcely be discussed."

The trial of this case in the district court was a protracted one. The record sent up contains 846 pages, which added to those of the briefs filed in this court make up a total of nearly one thousand pages.

The matter is complicated. This opinion will be better understood if read in connection with the one just cited (38 P.R.R. 563–578).

The Negroni-Rodríguez spouses, as owners of the three rural properties designated in the complaint herein by the letters "A," "B" and "C," and situated in the district of Yauco, leased said properties to their son, Francisco Negroni, for a term of ten years. Later the said spouses were divorced and each became the owner of an undivided one-half interest in the properties. Negroni sold his one-half interest to plaintiff Díaz, and shortly thereafter Mrs. Rodríguez sold hers to the brothers Francisco and Antonio Delgado, to whom the lessee Francisco Negroni had just sublet the properties. Díaz exercised the action of redemption (retracto) against the Delgado brothers and the latter finally consented. After the proper judgment had been rendered and Díaz had become the owner of the properties, he instituted the present unlawful detainer proceeding based on two causes of action. As before stated, the case was tried, and the court decided it against the plaintiff, who took the present appeal.

The first cause of action is predicated on the claim that upon the acquisition by the sublessees, defendants in the present action, of the undivided interest held by Mrs. Rodríguez, the lease on the said joint interest was termi-

nated by reason of a merger or rights, and that said lease was not revived by virtue of the judgment in redemption. That being so, the appellant further argues, the defendants continued in the possession of the properties as tenants at sufferance in regard to the said undivided interest, and plaintiff's right to dispossess them is clear.

We do not agree. The fact has not been questioned that the ten-year lease on properties A, B and C was recorded in the registry of property. Therefore, the purchaser was bound to respect it. It is true that the sublessees had stated that, they having become the owners of a moiety of the properties leased by them, the lease had lapsed as to such moiety; but inasmuch as the sale to them of the said share was set aside, the other co-owner having exercised his right of redemption, the resulting merger of rights had also failed. The actions of men not only produce in law such consequences as may benefit their authors but also all other consequences which naturally flow from them. The sublessees had deemed the lease terminated, because they considered themselves to be the owners. When they ceased to be such owners as the result of the action of another person who established his paramount right to acquire the said undivided interest, the merger above referred to ceased to have any existence, the basis on which it rested having disappeared, and the lease continued as if nothing had happened.

We shall now consider the second cause of action, which relates to the default in the payment of the rental and involves the questions that have really perplexed us in deciding this case.

For the purposes of treatment, these questions may be divided as follows:

1. The alleged default in the payment or deposit of the rent due on March 30 and April 6, 1925;

2. The deposit of a large number of rentals on Tuesdays and Wednesdays instead of on Monday of each week, as stipulated in the contract, and

3. The alleged default in the payment or deposit of the rentals as to one-half of the properties from April 14, 1925, to March 1, 1926, during which time the action of redemption was being prosecuted.

Let us take up first the question relating to the rentals due on March 30 and April 6, 1925.

Plaintiff Díaz purchased his joint interest from Negroni on March 26, 1925. He was entitled to a share in the weekly rental due on March 30 and to the whole of the rental due on the following 6th of April. He claims that he never received the said rentals. The defendants, on the other hand, contend that Francisco Negroni, not having any knowledge of the contract between Díaz and his lessor, paid to the latter the rental due on March 26 and deposited in his name the one due on April 6. Did they prove this?

Before pronouncing ourselves on this point, we think it advisable to note the views expresed in this connection by the trial court, thus:

"From the evidence heard and the weight accorded to it, the court is not convinced that the rentals due on March 30 and on April 6, 1925, had not been paid by Francisco Negroni.

"But granting that Francisco Negroni had failed to pay the said rentals, can such default be ground for a rescission of the lease and for the dispossession sought? We do not think so, because the Delgado brothers are third persons (terceros) and can only be prejudiced by such rescissory grounds as appear of record, and inasmuch as no such grounds appear from the registry of property, the said cause of action for dispossession based on a rescission of the lease does not lie."

We can not at all agree that the defendants in the present case, as sublessees of Francisco Negroni, should be regarded as third persons (terceros) with respect to the lease executed by the owners of the properties to Negroni. If that theory were accepted, any lessee who failed to pay the rent could defeat an action of unlawful detainer based on that ground by merely subletting the property to another person. The latter would then plead that he was in possession of the

property and he could not be dispossessed by reason of such default in the payment of the rent because he was a third person, who could not be prejudiced by the acts of the lessee, from whom he had taken a sublease.

The defendants themselves, notwithstanding their contention that they are third persons, took care to introduce evidence as to payment of the rent by Francisco Negroni. What sort of evidence was it, and what was its effect?

We realize, of course, the difficulties confronted by the defendants in gathering their evidence as to the payment of those rentals—a point which is emphasized by their attorney in his brief—considering the lateness of the filing of the complaint in unlawful detainer. But from the beginning everything showed that this was not an ordinary case and, therefore, the defendants ought to have been on their guard, prepared with the proper evidence to meet any attack on their rights, especially as regards the payment of the rent, since section 9 of the Unlawful Detainer Act provides:

"When the complaint is founded upon the nonpayment of the rental or price stipulated in the contract, the defendant shall not be allowed to submit any proof except the receipt or some other document showing that the payment has been made."

One of the defendants testified that he had knowledge of the payment of the rental due on March 30, 1925, made by Francisco Negroni to his lessors, because Francisco Negroni not only had shown the receipt but had delivered it to him, which receipt he had been unable to find up to the time of the trial. This testimony was admitted over the plaintiff's objection, and, even if its admission were justified, the evidence itself would be of very doubtful value and could only favor the case of the defendants, if Francisco Negroni had no knowledge of the sale from his father Andrés to plaintiff Díaz, which is still more doubtful.

The defendants attempted to show the payment or deposit of the rental due on April 6, 1925, by the deposit made by

Francisco Negroni in the name of Andrés Negroni in the bank on April 7, 1925. The making of such a deposit was indeed proved, but it was also shown by Andrés Negroni's own testimony that when the certificate or check—he does not remember which—was brought to him, he told the person who delivered the same: "Take this to Joaquín Díaz or to the Delgados, because I am no longer the owner of that property," and the rental was returned to the bank and has never been received by Díaz. It was not even shown whether the deposit had been transferred to his name.

In regard to this deposit, no application indeed can be made of the provisions of section 1430 of the Civil Code, to the effect that: "A debtor who, before having knowledge of the assignment, should pay the creditor shall be released from the obligation", because on April 7, 1925, the knowledge on the part of Francisco Negroni as well as of the defendants, as to the transfer from Andrés Negroni to the plaintiff Díaz, was already evident, not from mere inferences, as was the case of the prior date of March 30, but from the express admission which the deed of sublease, executed on the same April 7th by Francisco Negroni and the defendants, contained thus:

" 'Fifth. That subsequently Andrés Negroni Lluberas conveyed to Joaquín Díaz y Díaz his aforesaid one-half undivided interest in each of the said properties by a public deed executed before notary Rafael Arjona Siaca on the 26th of March instant.' "

The appellees, however, insist that, even though the evidence introduced should be regarded as insufficient to show that payment had been made to Díaz of the rentals due on March 30 and April 6, 1925, inasmuch as the deposit of the subsequent rentals had been accepted, the presumption arose that the prior rentals had been paid (Section 102 of the Law of Evidence), and hence the contract of lease had been acknowledged and was in force. This leads us to a consideration of the second ground—nonpayment of rent—on which the action of unlawful detainer is based.

There is no question that from April 13, 1925, until March 1, 1926, when by virtue of the judgment in the action of redemption plaintiff Díaz became the owner of the whole property, the defendants deposited weekly in the bank the portions of the rent corresponding to the undivided interest purchased by the plaintiff from Andrés Negroni, and that from the latter date on they deposited the whole rental in the name of the said Díaz. Nor is there any doubt that some deposits were not made on the day of the week stipulated in the contract but on the following day.

Did the defendants comply with the contract by merely depositing the rentals in the bank?

In order to answer this question in the affirmative it will suffice to transcribe the third clause of the lease, executed on October 21, 1924, in Guayanilla, before notary Padró by the then spouses Negroni-Rodríguez and their son Francisco Negroni Rodríguez, which clause reads as follows:

"THIRD: The rental in the present lease shall be TWENTY-FIVE DOLLARS PER WEEK, which Don Francisco shall pay to Don Andrés on each Monday, and which he shall deposit in any banking institution of this town at the disposal of Don Andrés."

What would be the effect of a failure to make the deposit on the stipulated day?

To our mind it would be the same as that caused by a failure to make payment on the day specially designated therefor. However, even admitting that this might be so, the defendants maintain that as the deposit had been accepted by the plaintiff, the fact that it was not timely made can not be urged as a ground for the dispossession.

In support of their assertion that the plaintiff accepted the deposit, the defendants argue that the bank was the agent of the plaintiff and, in any event, that the fact that the plaintiff failed to reject the deposits implied an acceptance thereof.

The bank was not acting as the agent of the plaintiff but of the defendants, as appears from a letter, introduced in

evidence, written by the defendants to the bank and in which it was said:

"Beginning on Monday the 13th inst., and thereafter on Monday of each week, you will please place at the disposal of Don Joaquín Díaz y Díaz the sum of twelve dollars and fifty cents ($12.50), and charge the same to our account."

In these circumstances, if the bank failed to credit the amounts at the proper time, its action was the action of the defendants themselves, who were liable for any consequences resulting therefrom.

As to the inferences to be drawn from the conduct of the plaintiff, although an express rejection of the deposit can not be concluded from his actions, neither can an acceptance be inferred therefrom.

It is a fact that Díaz never made use of the sums so deposited but continued to litigate, first in the action of redemption and then, as soon as that case was decided in his favor, in the present unlawful detainer proceedings.

Perhaps if the delay in making the deposits were the only ground alleged and proved by the plaintiff to show the defendants' failure to comply with the terms of the lease, he would have a weak case indeed; but we know what happened regarding the rentals due on March 30 and April 6, 1925, and we shall presently consider the third and last ground on which the claim as to the failure to pay is predicated, and all the facts taken together so support plaintiff's case that we feel bound to conclude that the dispossession lies.

After the plaintiff Díaz became the owner of a one-half interest in the properties by purchase from Andrés Negroni, and upon learning of the purchase of the other half by the Delgado brothers, on April 14, 1925, within the short period granted by the statute, he instituted against them the action of redemption which has been repeatedly referred to in the course of this opinion. The defendants resisted the action at first and filed their answer on June 26, 1925. But they

finally consented in writing on February 18, 1926, and two days later the court rendered judgment accordingly.

During the pendency of the action of redemption, the defendants deposited only one-half of the rental in the name of Díaz. After the entry of the said judgment they started depositing the whole rental. They did nothing in regard to the portion they had failed to deposit, which portion has never been received by Díaz nor deposited in his name either at the commencement of the action of unlawful detainer herein or at any time since.

In our opinion, although the attitude of the defendants in confining themselves to deposit in the bank only one-half of the rent was consistent with their position in the action of redemption, there can be no doubt that they ought at least to have deposited the other half as soon as the action of redemption was decided in favor of the plaintiff, so as to be entitled to plead a full compliance by them with the terms of the lease, since Díaz, by virtue of the judgment rendered in that action, was considered to have owned the property from the date of the sale by reason of the retroactive effect of the fulfillment of the resolutory condition involved in the redemption.

The appellees, on the contrary, maintain in their excellent brief that they were not bound to pay the said rentals to the plaintiff Díaz because, as civil fruits were involved in accordance with section 362 of the Civil Code, and as they were possessors in good faith, until the judgment in the action of redemption was rendered, such fruits, which are considered as daily proceeds, belonged to them in fact and in law. (Section 453 of the Civil Code.)

We do not agree, since one of the premises on which this argument is based is the good faith of the defendants up to the time of the rendition of the judgment, whereas under the law and the jurisprudence, once the judgment has been rendered, such good faith can only be deemed to have existed

up to the day on which the defendants were summoned in the action of redemption.

Section 438 of the Civil Code in force says:

"Sec. 438. It is presumed that possession is continued under the same understanding by which it was acquired, until the contrary be proven."

In his commentaries on article 435 of the former Civil Code, equivalent to section 438, *supra,* Manresa expressed himself as follows:

"*Possessor in good faith converted into possessor in bad faith.*— Under article 435 a possessor in good faith becomes a possessor in bad faith from the moment he becomes aware that his possession is wrongful, as stated by us when commenting on the said article. Similarly as to a defeated possessor, from the time he is first judicially summoned."

The rules above set forth concerning the possession in good faith control up to the time such possession is considered lost; thereafter, the rules relating to the possession in bad faith must be applied." 4 Manresa, Commentaries on the Spanish Civil Code, 2nd. ed., p. 274.

Having arrived at the above conclusions, and as the dispossession sought must be ordered, it is not necessary to consider the other question raised in regard to the difficulties arising from the occupancy and use of the property marked letter "D," which the defendants voluntarily vacated. As soon as the plaintiff takes possession of properties A, B and C, he will have the outlet he claims across his own land.

The judgment appealed from must be reversed and another rendered instead sustaining the complaint also as to properties A, B and C, without any special imposition of costs.